# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Fluor Federal Solutions, LLC ) ASBCA No. 61353
)
Under Contract No. N69450-12-D-7582 )

APPEARANCES FOR THE APPELLANT: John S. Pachter, Esq.
Jennifer A. Mahar, Esq.
Kathryn T. Muldoon Griffin, Esq.
Smith Pachter McWhorter PLC
Tysons Corner, VA

APPEARANCES FOR THE GOVERNMENT: Craig D. Jensen, Esq.
Navy Chief Trial Attorney
Russell A. Shultis, Esq.
Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE CLARKE
## ON APPELLANT'S MOTION FOR SUMMARY JUDGMENT

Fluor Federal Solutions, LLC (Fluor), moves for summary judgment contending that the Navy had no right to unilaterally change the above-captioned contract's (the contract's) Award-Option Plan and unilaterally exercise Award Option 3 thereby imposing a total fixed price of $40,581,639. Fluor's certified claim seeks $14,814,503 which is the difference between the $40,581,639 and Fluor's estimated price for performance. We have jurisdiction pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. We grant summary judgment and sustain the appeal.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On December 13, 2011, the Navy awarded the contract for base operation services at four Navy installations in the Jacksonville, Florida, area (R4, tab 1.3). The contract included a base year, four option years and three award option years (*id.* at 3-10[1]). Each year of the contract included firm-fixed-price (FFP) and indefinite-delivery, indefinite-quantity (IDIQ) line items. Award Option 3 included contract line item number (CLIN) 0015, an FFP line item priced at $31,374,431, and CLIN 0016, an IDIQ line item priced at $9,207,208, for a total of $40,581,639. (*Id.* at 10)

---

[1] The Rule 4 files are in electronic PDF format and all page numbers in cites are to the PDF page numbers.

2. The contract incorporated by reference the Federal Acquisition Regulation (FAR) 52.243-1, CHANGES–FIXED-PRICE (AUG 1987) (R4, tab 1.3 at 29). FAR 52.243-1 provides five alternatives for subparagraph (a). The preamble to Alternate I reads in part, "If the requirement is for services, other than architect-engineer or other professional services, and no supplies are to be furnished, substitute the following paragraph (a) for paragraph (a) of the basic clause." The Alternate I, subparagraph (a), reads:

> (a) The Contracting Officer may at any time, by written order, and without notice to the sureties, if any, make changes within the general scope of this contract in any one or more of the following:
>
> (1) Description of services to be performed.
>
> (2) Time of performance (i.e., hours of the day, days of the week, etc.).
>
> (3) Place of performance of the services.

FAR 52.243.1. Alternate I was not listed next to FAR 52.243-1 in the list of clauses incorporated by reference in the contract (R4, tab 1.3 at 29). However, because this is a contract for services, we consider Alternate I to apply.

3. The contract included FAR 52.217-8, OPTION TO EXTEND SERVICES (NOV 1999), which read:

> The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within 30 Calendar days.

(R4, tab 1.3 at 33)

4. The contract included a clause entitled "Period of Performance":

> The contract term shall be for a base period of one year, four one-year option periods, and three one-year award option periods, not to exceed a total of 96 months. Please note, the

2

term of the contract and CLINs may be adjusted to align the period of performance(s) with the fiscal year due to funding constraints. The Government may extend the term of the contract in accordance with FAC 5252.217-9301,[2] Option to Extend the Term of the Contract–Services and the Award Option Plan incorporated in this solicitation and resulting contract.

(R4, tab 1.3 at 20, *see also* at 11, "CONTRACT TERM")

5. The contract included FAC 5252.217-9301, OPTION TO EXTEND THE TERM OF THE CONTRACT – SERVICES (JUN 1994), that reads:

(a) The Government may extend the term of this contract for a term of one (1) to twelve (12) months by written notice to the Contractor within the performance period specified in the Schedule; provided that the Government shall give the Contractor a preliminary written notice of its intent to extend before the contract expires. The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option provision.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed 96 months.

(R4, tab 1.3 at 46)

*Award-Option Plan*

6. The contract included an Award-Option Plan that established award-option provisions (app. supp. R4, tab 201). The introduction to the plan included section 1.0:

**1.0     INTRODUCTION**

b.   This plan describes the method for assessing the Contractor's performance that will be considered

---

[2] FAC stands for Federal Acquisition Circular.

prior to determining eligibility in earning any
award-option extensions to the contract. The
award-option incentive is intended to motivate and
reward high-level performance in executing the
provisions of the contract. For purposes of this Plan,
high-level performance is defined as "Very Good" or
"Exceptional". As such, the Contractor must receive
a "Very Good" or "Exceptional" end-of-period
performance rating (as well as at least "Satisfactory"
on each individual assessment criteria) to earn an
award-option period under this contract. *The
Award-Option Determining Official (ODO) will
make the award-option determinations based upon
the criteria outlined in paragraph 4.0, Award-Option
Assessment Criteria.*

(*Id.* at 3) (Emphasis added) Section 2.0, Organization, defines the award-option team.
"The Award-Option team consists of the ODO an Award-Option Board (AOB), and
Performance Assessment Representatives (PARs)" (*id.*). The administrative
contracting officer (ACO) actually exercises the options (*id.* at 5), but it is important to
note that even if Fluor earned an award option by virtue of its high level performance,
the ACO was not actually required to exercise the option (*id.*).

7. Section 4.0, Award-Option Assessment Criteria, reads:

Assessment criteria listed in Section 10.0, Award-Option
Assessment Criteria, will be used to assess performances.
Each element is assigned a relative weight. As contract
work progresses from one performance period to the next,
the relative importance of specific assessment criteria may
change.

(App. supp. R4, tab 201 at 4) The assessment criteria at section 10.0 are presented in a
two-page table listing criteria for Unsatisfactory, Marginal, Satisfactory, Very Good
and Exceptional assessments (*id.* at 7-8).

8. The AOB prepares its end-of-period assessment that it forwards to the ODO
(app. supp. R4, tab 201 at 5). Section 5.0, Performance Assessments, subparagraph e
reads:

e. ODO End-of-Period Assessment: The ODO makes a
final assessment of the end-of-period evaluation rating
within fifteen (15) days of receipt of the AOB

4

assessment report. Accordingly, the ODO has the flexibility to change the recommended rating as a result of:

(1) extraordinary input from the activity or other sources;

(2) trends in performance in all functions or any general economic or business trends which may affect performance capability; or

(3) any other information the ODO determines is applicable to the Contractor's performance assessment.

The ODO documents the rationale for any changes to the recommended rating.
The ODO forwards the final rating determination to the ACO.

(*Id.*)

9. Section 6.0 of the plan reads as follows:

### 6.0 AWARD-OPTION DETERMINATION

The primary intent of the award-option incentive is to motivate the Contractor to perform the required services in such a manner as to warrant the highest possible rating during each performance period. All unearned award options will be deleted by unilateral modification to the contract. Once all award-option periods have been earned or deleted by modification, evaluations for the remaining performance periods will be conducted in accordance with CPARS/ACASS/CCASS, as applicable. A Contractor must receive at least a "Satisfactory" rating on each individual assessment criteria and a *"Very Good" or "Exceptional"* end-of-period performance rating to be eligible for an award-option for the associated performance period. "Exceptional" ratings earn twelve (12) months and "Very Good" ratings earn six (6) months.

(App. supp. R4, tab 201 at 5) The final "end-of-period assessment" is made by the ODO after consideration of the AOB's assessment (*id.*).

10. Award-Option Plan, section 8.0, reads:

## 8.0 AWARD-OPTION PLAN CHANGES

The ODO may unilaterally change the assessment criteria covered in this plan, provided the Contractor receives notice of any changes at least fifteen (15) calendar days prior to the performance period to which the changes apply. Changes to this plan that are applicable to a current performance period will be incorporated by a bilateral modification under the appropriate contract clause.

(App. supp. R4, tab 201 at 5)

11. Performance of the contract began on July 1, 2012, and the Navy exercised all four of its non-award plan options (APMF ¶ 2).[3] After the conclusion of option year 2, the Navy found Fluor's performance only "Marginal" and deleted award option year 1 from the contract, in accordance with the Award-Option Plan. After the conclusion of option year 3, the Navy found Fluor's performance to be only "Satisfactory" and deleted award option year 2 from the contract. (APMF ¶¶ 11-12) Option year 4 ran from July 1, 2016 to June 30, 2017 (APMF ¶ 2).

12. On August 25, 2016, during performance of the fourth and final option year of the contract, the Navy issued a solicitation for a follow-on contract to perform many of the services contained within the contract (GPMF ¶ 2).[4] Fluor filed a pre-award bid protest which ultimately led to the Navy's withdrawing the solicitation on May 9, 2017 (GPMF ¶¶ 4-9).

*AOB's Interim Assessment*

13. On March 28, 2017, the AOB issued an interim assessment for the "period of 1 July 2016 to 31 December 2016." Fluor received an overall rating of Satisfactory. (R4, tab 3 at 12) The interim assessment included the following:

This is an interim assessment with a rating of "Satisfactory". As a reminder, a minimum rating of

---

[3] "APMF" refers to Fluor's Proposed Material Facts to which the Navy has agreed.
[4] "GPMF" refers to the Navy's Proposed Material Facts.

6

"Satisfactory" is required on each individual assessment criteria and "Very Good" or "Exceptional" end-of-period assessment rating is required to earn an award option. A "Very Good" rating earns 6 months and an "Exceptional" rating earns 12 months. Fluor is urged to take action to improve performance that results in ratings eligible to earn an award option. *In the absence of an "Exceptional" or "Very Good" rating being earned, the Option Determining Official reserves the right to unilaterally determine the award of an award option if the determination is in the best interest of the United States Government.*

(*Id.* at 13) (Emphasis added)

*Unilateral Modification Nos. P00187 and P00193*

14. Unilateral Modification No. P00187, dated April 4, 2017, changed Award-Option Plan, section 6.0, as follows:

> The purpose of this modification is to incorporate the revised Award Option Plan for available Award Option 3, a future performance period. Paragraph 6.0 is revised to state *"The ODO may make a final assessment to issue a unilateral modification awarding a future performance period award-option of up to twelve (12) months for the convenience of the Agency, when the contractor has obtained a rating of "Satisfactory."* The revised Award Option Plan is hereby incorporated into this modification.

(R4, tab 2.187 at 2) (Emphasis added)  Modification No. P00187 listed "FAR 52.243-1 ALT I Changes Fixed-Price" as the authority for the modification (*id.* at 1).

15. By letter dated May 4, 2017, Fluor objected to unilateral Modification No. P00187 arguing that the Navy had no right to unilaterally modify the Award-Option Plan to give itself the right to exercise Award Option 3 based on a "satisfactory" performance rating for the Navy's "convenience" (app. supp. R4, tab 207 at 2). Fluor stated it was willing to negotiate a bilateral agreement to perform for another year, or, if the Navy would not negotiate a bilateral agreement, Fluor would file a claim for its allowable costs and reasonable profit for its continued performance (*id.* at 3).

16. By letter dated May 5, 2017, the Navy citing Modification No. P00187, notified Fluor that the ODO "has determined it to be in the best interest of the United

States Government to begin the process of exercising Award Option 3 CLINs 0011 and 0012 due to be effective July 01, 2017 through June 30, 2018" (app. supp. R4, tab 208).

17. By letter dated May 9, 2017, the Navy acknowledged Fluor's May 4, 2017 letter and stated:

> In accordance with Contract No.: N69450-12-D-7582. Section I - Contract Clauses, 52.243-1 -- Changes -- Fixed Price (Aug 1987)(e) - Failure to agree to any adjustment shall be a dispute under the Disputes clause. However, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed.

(App. supp. R4, tab 209)

18. By letter dated May 17, 2017, the Navy notified Fluor that it "is considering issuing a modification to exercise Award Option Three on the subject contract" (app. supp. R4, tab 210).

19. By unilateral Modification No. P00193, dated June 28, 2017, the Navy exercised Award Option 3 with a 12-month period of performance from July 1, 2017 through June 30, 2018 (R4, tab 2.193 at 1). The modification included the following:

> 1. In accordance with NAVFAC Clause 5252.217-9301 award option three for the period 01 July 2017 through 30 June 2018 is exercised.
>
> Total firm-fixed-price (CLIN 0011)   $38,998,932.58
> Total indefinite quantity (CLIN 0012) $ 9,144,271.00
> Total estimated award option 3 price  $48,143,203.58

(R4, tab 2.193 at 2)[5]

---

[5] We do not know why CLINs 0011 and 0012 were listed rather than 0015 and 0016 and we do not know why CLIN prices were also changed. However, we need not sort this out for the purposes of this decision.

*Fluor's Claim*

20. Fluor objected to Modification Nos. P00187 and P00193 and on July 25, 2017, submitted a certified claim to contracting officer (CO) Eric Binderim in the amount of $14,814,503 (R4, tab 3). The claim included the following:

> This is a certified claim and request for Contracting Officer's Final Decision under the Contract Disputes Act (41 USC §§ 7101-09) and the contract's Disputes clause (FAR 52.233-1 Disputes (July 2002)). Fluor asserts entitlement to its allowable costs of performing Award Option 3, plus a reasonable profit. Appendix A provides an estimate of the costs to be incurred for the period July 1, 2017 through June 30, 2018, plus a reasonable profit. The total estimated costs, plus profit, for recurring (firm-fixed price Contract Exhibit Line Items ("ELINs")) and non-recurring (Indefinite Delivery/Indefinite Quantity ("IDIQ") ELINs) work is $62,957,707. This represents an estimated increase over the Mod 193 values of $11,480,750 for recurring work and $3,333,753 for non-recurring work—a total estimated increase of $14,814,503.

(*Id.* at 2-3) The $14,814,503 was calculated by subtracting the $48,143,203.58 for Award Option 3 (R4, tab 2.193 at 2) from the estimated cost for performance of Award Option 3 of $62,957,707. Claim Appendix A presents the calculation of the $62,957,707 estimate and is based on Fluor's costs during Award Option 4, July 4, 2016 to July 2, 2017. (R4, tab 3 at 47) Fluor contends that the Navy had no authority to issue unilateral Modification No. P00187 changing Award-Option Plan section 6.0 and unilateral Modification No. P00193 exercising Award Option 3 and consequently Fluor is entitled to the allowable costs and profit for performing during that year.

21. By letter dated August 10, 2017, the Navy asserted that the claim "will require an audit from the Defense Contract Audit Agency [DCAA] along with other independent analyses" (R4, tab 4).

22. By letter dated August 17, 2017, Fluor responded to the Navy's August 10. 2017, letter stating that its claim was "complete as submitted," that the claim's quantum was based on an estimate and a DCAA audit was not necessary for the Navy to issue a final decision within the statutory 60 days (app. supp. R4, tab 211). On September 14, 2017, the Navy sent Fluor another letter again stating that the claim required a DCAA audit and that a final decision was expected to be issued by December 29, 2017 (app. supp. R4, tab 212). Fluor responded by letter dated September 15, 2017, again objecting to the delay in issuing

the final decision and indicated it would treat the claim as deemed denied (app. supp. R4, tab 213).

23. On September 28, 2017, Fluor appealed to the Board based on a deemed denial of its claim. On October 2, 2017, the Board docketed Fluor's appeal as ASBCA No. 61353.

## DECISION

*Legal Standard for Summary Judgment*

We evaluate Fluor's motion for summary judgment under the well-settled standard:

> Summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment.

*Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987) (citations omitted). In the course of the Board's evaluation of a motion for summary judgment, our role is not "'to weigh the evidence and determine the truth of the matter.' but rather to ascertain whether material facts are disputed and whether there exists any genuine issue for trial." *Holmes & Narver Constructors, Inc.*, ASBCA Nos. 52429, 52551, 02-1 BCA ¶ 31,849 at 157,393 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A material fact is one which may make a difference in the outcome of the case. *Liberty Lobby*, 477 U.S. at 249. The opposing party must assert facts sufficient to show a dispute as to a material fact of an element of the argument for reformation or breach. *New Iraq Ahd Co.*, ASBCA No. 59304, 15-1 BCA ¶ 35,849 at 175,291-92 (citing *Mingus*, 812 F.2d at 1390-91) ("To ward off summary judgment, the non-moving party must do more than make mere allegations; it must assert facts sufficient to show a dispute of material fact."); *see Lee's Ford Dock, Inc.*, ASBCA No. 59041, 16-1 BCA ¶ 36,298 at 177,010.

*Positions of the Parties*

The Navy originally took the position that Modification No. P00187 was authorized by the Changes clause, FAR 52.243-1. However, in its Rule 11 brief the Navy admits that "Fluor is correct that the Navy could not issue a unilateral modification to amend the Award Option Plan pursuant to the changes clause" (gov't resp. br. at 16).

10

Now, the Navy argues, "It [Modification No. P00187] was issued in accordance with the discretion afforded by Award Option Plan" (*id.*). The Navy points to Award-Option Plan, section 5.0, subparagraph (e), that authorizes the ODO to change the AOB's final assessment as the source of the discretion it invokes (*id.* at 15). The Navy also cites FAR 43.103, Types of contract modifications, paragraph (b), that reads:

> (b) *Unilateral.* A unilateral modification is a contract modification that is signed only by the contracting officer. Unilateral modifications are used, for example, to —
>
> (1) Make administrative changes;
>
> (2) Issue change orders;
>
> (3) *Make changes authorized by clauses other than a changes clause (e.g., Property clause, Options clause, or Suspension of Work clause)*; and
>
> (4) Issue termination notices.

(Bold added) The Navy quotes FAR 43.103(b)(3) in support of its argument that unilateral Modification No. P00187 was authorized (gov't resp. br. at 16). The Navy also argues that Fluor's pre-award protest and stay request and the Navy's market research caused it to cancel the solicitation. As a result "there was no other contractor available to provide those services" and Fluor "was well aware that the Navy may need to exercise Award Option 3." (Gov't resp. br. at 16-17) The Navy asks the Board to "issue a declaratory judgment in its favor" (gov't mot. at 13).

In response to the Navy's acknowledgement that the Changes clause does not authorize Modification No. P00187, Fluor argues that FAR 43.103 "does not give the Navy authority to make unilateral modifications" (app. reply br. at 14). Fluor argues that the Award-Option Plan limits "unilateral modifications to two circumstances: (1) deleting unearned options from the Contract; and (2) modifying the award option assessment criteria" (*id.*). Fluor argues that Modification No. P00193 was a constructive change because the option exercise was not in accord with the original Award-Option Plan (*id.* at 12-14) (citing *Alliant Techsystems v. United States*, 178 F.3d 1260, 1275 (Fed. Cir. 1999)) (any attempt to exercise an option outside its terms does not constitute a valid exercise of the option).

11

*There are No Material Disputed Facts*

Resolution of this motion is mainly a matter of contract interpretation. a question of law. *States Roofing Corp. v. Winter*, 587 F.3d 1364, 1368 (Fed. Cir. 2009). All of the material facts needed to resolve this appeal are either based on documents or are undisputed. Essentially the documents are: FAR 52.243-1, Changes – Fixed-Price (SOF ¶ 2); FAR 43.103, Types of contract modifications; FAR 52.217-8, Option to Extend Services (SOF ¶ 3); Period of Performance (SOF ¶ 4); FAC 5252.217-9301, Option to Extend the Term of the Contract – Services (Jun 1994) (SOF ¶ 5); the Award-Option Plan (SOF ¶¶ 6-10); Modification No. P00187 (SOF ¶ 14); and Modification No. P00193 (SOF ¶ 19). The parties dispute the interpretation of these documents. Fluor's appeal, ASBCA No. 61353, is therefore susceptible to resolution by summary judgment.

*FAR 43.103, Types of Contract Modifications*

First we will deal with FAR 43.103 cited by the Navy in its brief (gov't resp. br. at 16). We agree with Fluor that FAR 43.103 does not bestow any authority to issue unilateral modifications under Contract No. N69450-12-D-7582; it is included in FAR Part 43, Contract Modifications, is not a FAR Part 52 contract clause, and simply defines bilateral and unilateral modifications. FAR 43.103(b)(3) parenthetically provides three examples of contract clauses that provide authority to make changes independent of the Changes clause. The Navy fails to identify an option clause in the contract that provides authority for it to issue unilateral Modification No. P00187. The fact that one of the examples is "Options clause" adds nothing to the purpose of FAR 43.103. The Navy's reliance on FAR 43.103 is misplaced.

*FAR 52.217-8, FAR 52.243-1 & Award-Option Plan Section 8.0*

We now deal with three provisions that are relevant but ultimately play no role in this decision. The Navy abandoned its reliance on FAR 52.243-1, Changes – Fixed-Price (SOF ¶ 2; gov't resp. br. at 16). Although FAR 52.217-8, Option to Extend Services, provides authority to unilaterally extend the contract, it is limited to a total of 6 months. Modification No. P00193 extended the period of performance by 12 months. (SOF ¶¶ 3, 19) Therefore, FAR 52.217-8 could not authorize Modification No. P00193. Award-Option Plan section 8.0, Award-Option Plan Changes, authorizes unilateral changes in the assessment criteria for future performance periods (SOF ¶ 10). Modification Nos. P00187 and P00193 did not change the assessment criteria and are not authorized by section 8.0.

12

*FAC 5252.217-9301, Option to Extend the Term of the Contract – Services*

We start with some fundamentals of contract interpretation:

> When interpreting the contract, the document must be considered as a whole and interpreted so as to harmonize and give reasonable meaning to all of its parts. *McAbee Constr., Inc. v. United States,* 97 F.3d 1431, 1434-35 (Fed. Cir. 1996). An interpretation that gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous. *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed. Cir. 1991).

*NVT Technologies, Inc. v. United States,* 370 F.3d 1153, 1159 (Fed. Cir. 2004). Therefore, we must interpret the relevant contract provisions to give meaning to all when read together.

The Period of Performance clause provides that the government may extend the term of the contract in accordance with FAC 5252.217-9301, Option to Extend the Term of the Contract – Services *and* the Award-Option Plan so long as the contract term does not exceed 96 months (SOF ¶ 4). As seen below the use of "and" is critical to our interpretation.

FAC 5252.217-9301, Option to Extend the Term of the Contract – Services, is an interesting clause. Standing alone it authorizes up to a 12-month extension with no conditions other than proper notice. Not only that, but it rolls over into the extended contract making it available to be used again limited only by a total period of performance of 96 months. Standing alone, it seems that this clause would have authorized the government to extend the contract for 12 months without regard to the Award-Option Plan. (SOF ¶ 5) This would authorize Modification No. P00193 without Modification No. P00187. However, we must harmonize this clause with the Period of Performance clause (SOF ¶ 4). The Period of Performance clause, through use of the word "and" links FAC 5252.217-9301, Option to Extend the Term of the Contract – Services, with the Award-Option Plan. We see only one reasonable interpretation of the Period of Performance clause and that is that FAC 5252.217-9301, Option to Extend the Term of the Contract – Services, is not intended to be used standing alone in this contract. To hold otherwise would leave the Period of Performance clause "useless, inexplicable, void, or superfluous" which is not the preferred interpretation. *NVT Technologies,* 370 F.3d at 1159.

13

Therefore, the authority granted by FAC 5252.217-9301, Option to Extend the Term of the Contract – Services, must be used in support of the Award-Option Plan.[6]

*The Award-Option Plan*

The Navy now argues that the Award-Option Plan provides ample authority for the Navy to do what it did. The Navy's Award-Option Plan argument deserves more attention than Fluor gives it credit. The relevant Plan provisions that we must interpret are: Award-Option Plan section 1.0, Introduction; section 4.0, Award-Option Assessment Criteria; section 5.0, Performance Assessments; and section 6.0, Award-Option Determination. (SOF ¶¶ 6-9)

Plan section 1.0, Introduction, requires that the contractor receive a "Very Good" or "Exceptional" end-of-period performance rating to be eligible for an award-option period. It requires the ODO to make the award-option determination based on the assessment criteria in section 4.0. (SOF ¶ 6) Section 4.0, requires use of the criteria listed in a two-page table in section 10.0 (SOF ¶ 7). Section 6.0, Award-Option Determination, reiterates that the contractor must receive a "Very Good" or "Exceptional" rating to earn either 6 or 12 months award-option periods respectively (SOF ¶ 9).

Probably the most interesting clause in the Award-Option Plan is section 5.0, Performance Assessments, subparagraph e. Section 5.0 gives the ODO the discretion to change the AOB's end-of-period rating as a result of:

> (1) extraordinary input from the activity or other sources;
>
> (2) trends in performance in all functions or any general economic or business trends which may affect performance capability; or
>
> (3) any other information the ODO determines is applicable to the Contractor's performance assessment.

---

[6] This construction makes more sense when we consider the details of the contract's Award-Option Plan. Importantly, this plan, which is meant to incentivize the contractor to do good work, does not guarantee the award of an option. Rather, it merely removes an impediment to the government to award the options for performance years 6, 7, and 8. If through operation of FAC 5252.217-9301, that impediment did not exist, there would be no point in the Award-Option Plan.

14

(SOF ¶ 8) The clause requires the ODO to document the rationale for any changes to the AOB's recommended rating (*id.*). The only reasonable interpretation of this provision is that the ODO had the right to increase the AOB's recommended rating if the ODO satisfied one or more of the three criteria of section 5.0(e) and documented the reasoning behind the change. The ODO could have raised the rating from satisfactory to exceptional and justified the 12-month extension in Modification No. P00193 without resort to FAC 5252.217-9301 or Modification No. P00187. Stated another way, the Navy had a way to do what it did, and now we must see if what actually happened complies with what the contract requires to raise the rating to exceptional.

Unilateral Modification No. P00187 changed Award-Option Plan, section 6.0, Award-Option Determination, to allow awarding an extension of 12 months based on an end-of-period rating of satisfactory "for the convenience of the Agency" (SOF ¶ 14). Modification No. P00187 documents that "for the convenience of the Agency" was the only criteria cited by the Navy. With an exceptional rating, the Navy had the right to extend the contract for 12 months pursuant to Award-Option Plan section 6.0, Award-Option Determination (SOF ¶ 9). However, section 5.0, does not grant the ODO unlimited discretion. The ODO must base the decision to increase the rating on the three criteria listed in section 5.0. The Navy's criteria of "for the convenience of the Agency" clearly does not satisfy the first two criteria listed in section 5.0. The third criteria for the exercise of that discretion is "any other information the ODO determines is applicable to the Contractor's performance assessment." This is indeed broad authority as the Navy argues, but does "for the convenience of the Agency" satisfy the criteria "any other information the ODO determines is applicable to the Contractor's performance assessment." We think not. We interpret the third criteria to require some relationship to a contractor's performance. We do not interpret "for the convenience of the Agency" to have anything to do with Fluor's performance. Since the ODO failed to document the rationale for the change as required by section 5.0, the Navy provides no explanation for its criteria.

We conclude that although the Navy is correct about the broad scope of the Award-Option Plan, it failed to properly exercise its authority under section 5.0.[7] The Navy had no authority to issue unilateral Modification No. P00187 changing the award-option exercise criteria in section 6.0 to satisfactory. There being no other way to authorize the unilateral change to section 6.0, Modification No. P00187 is unenforceable. The authority to issue unilateral Modification No. P00193 was based on Modification No. P00187 and therefore, Modification No. P00193 is likewise

---

[7] Based on the record as it stands today, even if the Navy had followed the criteria in section 5.0, we doubt the Navy's increasing the AOB's rating to exceptional would survive a challenge, if the criteria remains "for the convenience of the Agency."

unenforceable. There being no genuine issue of material fact we find Fluor is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, we grant summary judgment and Fluor's appeal is sustained. The case is remanded to the parties to determine quantum.

Dated: January 10, 2019

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61353, Appeal of Fluor Federal Solutions, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

16